UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

UNITED STATES OF AMERICA,

                    Plaintiff,

       v.

PETER DAVIDSON,

                   Defendant.

_____

<u>REPORT & RECOMMENDATION</u>

10-CR-6213CJS

## <u>PRELIMINARY STATEMENT</u>

By Order of Hon. Charles J. Siragusa, United States District Judge, dated
November 16, 2010, all pretrial matters in the above-captioned case have been referred to this
Court pursuant to 28 U.S.C. §§ 636(b)(1)(A)-(B).  (Docket # 18).

Defendant Peter Davidson ("Davidson") has been charged in a three-count
indictment related to drug trafficking violations.  (Docket # 1).  Specifically, the first count
charges Davidson with conspiracy to possess with intent to distribute and to distribute five or
more kilograms of cocaine and 100 grams of heroin in violation of 21 U.S.C. § 846.  (*Id.*).  The
second count charges Davidson with possession of firearms in relation to drug trafficking crimes
in violation of 18 U.S.C. §§ 924(c)(1) and 2.  (*Id.*).  Finally, the third count charges Davidson
with money laundering under 18 U.S.C. § 1956(h).  (*Id.*).

Currently pending before the Court is Davidson's motion to suppress tangible
evidence seized from his place of business and his residence on the grounds that the search

warrants were not supported by probable cause.  (Docket # 32).[1]  In addition, Davidson has

moved to suppress certain statements he made to law enforcement following his arrest on

October 26, 2010.[2]  (*Id.*).  On October 12, 2011, an evidentiary hearing was held concerning the

circumstances of Davidson's statements.  (Docket # 53).[3]  At the hearing, United States

Immigration and Customs Enforcement ("ICE") Special Agent Anthony Patrone ("Patrone")

testified on behalf of the government.

       For the reasons discussed below, I recommend that the district court deny

Davidson's motions to suppress the tangible evidence and statements.

---

[1]  Davidson's omnibus motion also sought, *inter alia*, an audibility hearing, the production of *Brady* and *Jencks* material, a conspiracy hearing, discovery and inspection, rulings under Federal Rules of Evidence 404, 608 and 609 and severance.  (Docket # 32).  Each of those motions was decided by the undersigned or resolved by the parties in open court on August 24, 2011.  (Docket # 46).

[2]  In support of his motion, Davidson submitted an affidavit that asserts both that he does not remember being advised of his *Miranda* warnings and that he was not properly advised of them.  (Docket # 49 at ¶ 5).  The government maintains that these assertions are insufficient to create an issue of fact to warrant an evidentiary hearing on whether Davidson's statements were voluntary.  (Docket ## 50; 54 at 7-8).  At the hearing, I declined to rule on that issue and ordered the hearing to go forward.  (Docket # 54 at 7).

An evidentiary hearing is required where a defendant demonstrates a "sufficient definite, specific, detailed, and nonconjectural" issue of fact.  *United States v. Pena*, 961 F.2d 333, 339 (2d Cir. 1992); *United States v. Richardson*, 2010 WL 5553995, *1 (W.D.N.Y. 2010) ("[i]n order to warrant a suppression hearing, the defendant must demonstrate a specific factual dispute that can be resolved by a hearing"; collecting cases), *report and recommendation adopted*, 2011 WL 53476 (W.D.N.Y. 2011).  Bald assertions that the statement was involuntary are insufficient to warrant a hearing.  *United States v. Cook*, 348 F. Supp. 2d 22, 28 (S.D.N.Y. 2004) (citing *United States v. Mathurin*, 148 F.2d 68, 69 (2d Cir. 1998)).

Here, Davidson has asserted both that he does not remember and that he was not properly advised of his *Miranda* rights.  Although these statements taken together may be ambiguous, I find that a suppression hearing was warranted on Davidson's assertion that he was not properly advised of his *Miranda* rights.  *United States v. De La Cruz*, 1997 WL 196048, *2 (N.D.N.Y 1997) (hearing required where defendant alleged that he was not advised of his *Miranda* rights prior to questioning).

[3]  The transcript of the October 12, 2011 hearing shall be referred to throughout as "Tr. __ ."  (Docket # 54).

## FACTUAL BACKGROUND

### I. Search Warrant Affidavit

On October 25, 2010, the undersigned issued two search warrants authorizing the seizure of, *inter alia*, records relating to the purchase, sale or distribution of narcotics from 139 Lyell Avenue and 107 Willowen Drive in Rochester, New York. (Docket # 43, Exs. D, E). Davidson has affirmed that he rents 139 Lyell Avenue as his place of business and that he owns and resides at 107 Willowen Drive. (Docket # 49 at ¶ 3; Tr. 23).

The application for the warrants included an affidavit of Agent Patrone, dated October 25, 2010, explaining his belief that probable cause existed to search the two premises. (Docket # 43, Ex. C "Aff."). Patrone's affidavit summarized evidence obtained through a two-year investigation conducted by several law enforcement agencies, including information obtained from four confidential sources, relating to Davidson's alleged involvement in a conspiracy to smuggle cocaine from Arizona to Rochester and to distribute it in the Rochester area. The affidavit also stated that Davidson owned and operated an automotive garage business, "Advance Auto," at 139 Lyell Avenue and that he owned and lived at 107 Willowen Drive. (*Id*. at ¶¶ 32-36).

According to Patrone's affidavit, a confidential source ("CS-1") provided information that during 2008 and 2009 Louis Hart (Davidson's co-defendant in this case) shipped kilogram quantities of cocaine from Arizona to Rochester by hiding it in vehicles transported on car haulers. (*Id*. at ¶ 8). CS-1 further stated that an individual who owned a garage at 139 Lyell Avenue, whom he knew as "Peter," picked up the vehicles shipped by Hart and then delivered them by tow truck to various locations. (*Id*. at ¶ 9). CS-1 also reported that during the summer

3

of 2009 Peter was stopped by law enforcement while towing a car containing cocaine that was

shipped by Hart.  (*Id*.).  According to the affidavit, CS-1 had been providing accurate and reliable

information to law enforcement since 2005.  (*Id*. at ¶ 7).

Patrone's affidavit confirmed that on June 2, 2009 Davidson was stopped for a

traffic violation.  At the time of the stop, he was driving a tow truck and was towing a car that

had been transported on a car hauler to Rochester from Arizona.  Four bricks of cocaine were

later recovered from the car; they had been hidden inside the rear passenger door.  (*Id*. at

¶¶ 24-27).  CS-1 provided law enforcement with telephone numbers for Hart, the records of one

of which revealed numerous calls dialed to and from Davidson's business number between May

29 and June 6, 2009.  (*Id*. at ¶ 10).

According to Patrone's affidavit, another informant, CS-2, also provided

information regarding Davidson and Hart and did so in an effort to receive favorable

consideration from the United States Attorney's Office.  At that time, CS-2 was facing federal

criminal charges and was cooperating.  CS-2 reported that between December 2007 and

November 2008 CS-2 personally observed Davidson use couriers to buy cocaine from Hart on a

weekly basis.  (*Id*. at ¶¶ 12-13).  According to CS-2, Davidson provided the couriers with drug

proceeds, which they then used to purchase four to five kilograms of cocaine from Hart in

Arizona.  After the purchase, the couriers would transport the cocaine from Arizona to Davidson

in Rochester, who would then distribute it to others in Rochester.  (*Id*. at ¶¶ 13-14).  CS-2

personally obtained large quantities of cocaine from Davidson on "consignment," which CS-2

paid for after he sold it.  (*Id*.).  CS-2 also observed that Davidson kept money from cocaine sales

in the ceiling of his automotive garage at 139 Lyell Avenue.  (*Id*. at ¶ 14).  Patrone affirmed that

the information CS-2 provided had been corroborated and had proved reliable.  (*Id*. at ¶ 11).

   Patrone's affidavit likewise described CS-3 as an informant who had provided

information to ICE in return for consideration in connection with criminal charges.  (*Id*. at ¶ 15).

According to Patrone, CS-3's information had proved reliable.  (*Id*.).  CS-3 stated that from

November 2007 to November 2008 Davidson arranged for and "funded" couriers to travel to

Arizona weekly to purchase cocaine from Hart in quantities ranging from two to seven

kilograms.  (*Id*. at ¶¶ 16, 19).  CS-3 once observed Davidson in possession of more than ten

kilograms of cocaine.  (*Id*. at ¶ 17).  According to CS-3, Davidson provided the cocaine to others

in Rochester for further distribution.  (*Id*.).  CS-3 stated that Davidson kept the proceeds of his

drug sales in a back office at his automotive garage and once observed Davidson retrieve a large

sum of cash from a filing cabinet in the office.  (*Id*. at ¶ 18).

   In addition, CS-3 reported that a group of three people who had been stopped in

Oklahoma in 2008 transporting cocaine hidden in a vehicle were acting as couriers for Davidson.

(*Id*. at ¶¶ 21-23).  According to CS-3, the driver of the vehicle, Patrick Bishop, was transporting

cocaine from Arizona to Davidson in Rochester.  (*Id*.).  Patrone's affidavit confirmed that on

November 24, 2008, Bishop and two others were stopped in Oklahoma in a vehicle that Bishop

was driving; approximately seven kilograms of cocaine was found hidden behind the vehicle's

fender, along with approximately $11,000 and hotel receipts from Arizona.  (*Id*.).

   With respect to the fourth informant mentioned in the affidavit ("CS-4"), Patrone

affirmed that CS-4 had provided reliable information to law enforcement in 2010 that had led to

several arrests.  (*Id*. at ¶ 20).  According to CS-4, during 2005 and 2006 CS-4 personally

observed Davidson in possession of kilogram quantities of cocaine at his automotive garage. (*Id*.).

Finally, the affidavit noted that on June 8, 2010, Arizona law enforcement officers seized approximately six kilograms of cocaine that had been hidden inside a rear door of a vehicle that Hart had been observed turning over to a car hauler earlier that day.  (*Id*. at ¶¶ 30-31).

The affidavit also articulated Patrone's opinion, based upon his training and six years of experience as an ICE agent, that drug traffickers who deal in large quantities of drugs frequently keep records and books regarding the financing of the trafficking and distribution activities at their residence and places of business.  Specifically, Patrone stated that to drug traffickers who sell on consignment, such as Davidson, "record keeping is of particular importance to keep track of controlled substance amounts and of amount of money paid and owed.  Such records are often maintained close at hand in a residence, a business or in a vehicle so that current balances can be readily determined."  (*Id*. at ¶ 38).


## II.  Statements

Patrone testified that on October 26, 2010, he participated in the execution of the warrant for 107 Willowen Drive.  (Tr. 9-10).  Davidson was inside the residence at the time of the execution, and Patrone and Drug Enforcement Administration ("DEA") Special Agent Brian Hanley ("Hanley") interviewed him following his arrest.  (Tr. 10-11).  The interview began at approximately 6:58 a.m. in a bedroom inside the residence.  (Tr. 11).

Patrone testified that at the beginning of the interview, he and Hanley introduced themselves, explained that they had a search warrant and obtained biographical information from Davidson, such as his name, date of birth and citizenship. (Tr. 12). At that time, Davidson was seated on the bed, Hanley was standing between Davidson and the bedroom door, and Patrone was crouched near the floor beside Davidson. (Tr. 12, 20). Both agents were dressed in street clothes, and their firearms remained holstered during the interview. (Tr. 16). Patrone could not recall whether Davidson was handcuffed during the interview, although he remembered that Davidson had been handcuffed following the search warrant team's entry into the residence. (Tr. 12-13, 20).

According to Patrone, about five minutes after commencing the interview, Hanley advised Davidson of his *Miranda* rights. (Tr. 12). Patrone testified that Hanley read the rights verbatim from a DEA-issued rights card. (Tr. 13-14; G. Ex. 1). After reading the rights from the card, Hanley asked Davidson whether he understood those rights and if he would be willing to answer questions. (Tr. 15). Davidson answered both questions affirmatively. (*Id.*).

Patrone and Hanley interviewed Davidson for approximately forty-five minutes. (Tr. 15, 18). At no time during the interview did Davidson indicate that he no longer wished to speak with the agents or wanted to speak with an attorney. (Tr. 15). Neither Patrone nor Hanley threatened, used force against or made any promises to Davidson in order to induce him to speak. (Tr. 15-16). Davidson never complained of being ill or injured. (Tr. 17). Davidson did not appear to be under the influence of drugs or alcohol and never indicated that he did not understand what was being said; indeed, Davidson responded coherently to the questions during

the interview.  (*Id*.).  Patrone recounted that Davidson appeared calm at the beginning of the

interview, but became agitated as it progressed.  (Tr. 17, 18).


## DISCUSSION

### I.  Challenge to Search Warrants

I turn first to Davidson's probable cause challenge to the search warrants.

(Docket # 32 at ¶¶ 58-60).  Specifically, Davidson contends that the warrants for both 139 Lyell

Avenue and 107 Willowen Drive are unsupported by probable cause because Patrone's affidavit

is "not detailed sufficiently" and does not describe criminal activity occurring at either location.

(*Id*.).  In addition, Davidson argues that the information provided by the confidential informants

does not detail "personal[] observ[ations] in terms of the distribution of illegal narcotics and

drugs."  (*Id*. at ¶ 60).

The Fourth Amendment to the Constitution provides that "no Warrants shall

issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the

place to be searched, and the persons or things to be seized."  U.S. CONST. amend. IV; *see also*

Fed. R. Crim. P. 41.  In *Illinois v. Gates*, 462 U.S. 213 (1983), the Supreme Court affirmed the

"totality of the circumstances" test to determine whether a search warrant satisfies the Fourth

Amendment's probable cause requirement.  According to the court, the issuing judicial officer

must "make a practical, common-sense decision whether, given all the circumstances set forth in

the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying

hearsay information, there is a fair probability that contraband or evidence of a crime will be

found in a particular place."  *Illinois v. Gates*, 462 U.S. at 238.  A reviewing court's obligation is

merely to determine that the issuing judge had a "'substantial basis for...conclud[ing]' that probable cause existed." *United States v. Smith*, 9 F.3d 1007, 1012 (2d Cir. 1993) (quoting *Illinois v. Gates*, 462 U.S. at 238-39) (internal quotation omitted); *Walczyk v. Rio*, 496 F.3d 139, 157 (2d Cir. 2007) ("a reviewing court must accord considerable deference to the probable cause determination of the issuing magistrate"). Moreover, "resolution of marginal cases should be determined by the preference to be afforded to warrants." *United States v. Smith*, 9 F.3d at 1012 (citing *Jones v. United States*, 362 U.S. 257, 270 (1960)).

On the record before me, I find that Patrone's affidavit provided probable cause to search both 139 Lyell Avenue and 107 Willowen Drive. First, I find that the affidavit sufficiently details information supporting probable cause to believe that Davidson had been conspiring with Hart over several years to transport and distribute kilogram quantities of cocaine from Arizona to Rochester. As recently as June 2010, Arizona law enforcement officers intercepted the delivery of a car that had been put on a car hauler by Hart and was determined to contain over six kilograms of hidden cocaine. Patrone's affidavit provided accounts from confidential sources with personal knowledge that Davidson used couriers to purchase multi-kilogram quantities of cocaine from Hart in Arizona and transport it to Rochester for further distribution by Davidson. In addition, Davidson was stopped towing a vehicle, which had been transported from Arizona to Rochester on a car hauler, that contained four bricks of cocaine hidden in a door. One confidential source had seen Davidson with ten kilograms of cocaine. Two confidential sources also described their personal observations of Davidson with drug proceeds inside his business at 139 Lyell Avenue. Patrone affirmed that each informant had a

record of providing accurate and reliable information.  These allegations provided ample

probable cause to believe that evidence of drug trafficking would be present at 139 Lyell Avenue.

Although Davidson is correct that the affidavit does not describe any criminal

activity occurring at 107 Willowen Drive, it does establish probable cause to believe that

Davidson lived there.  It also articulates Patrone's opinion, based on six years of experience and

training, that large-scale narcotics traffickers frequently keep records and other documents

relating to their narcotics trafficking activities in their residence.  Patrone further opined that

individuals who, like Davidson, sell substantial quantities of narcotics on consignment are

especially likely to maintain records reflecting quantities of narcotics "fronted" and sums of

"money paid and owed."  (Aff. at ¶ 38(d)).

It is well-settled that an affiant's statement that his experience "had taught him

that major drug traffickers frequently maintain at their homes large amounts of cash, drugs,

books, ledgers and other documents evidencing their criminal activities" is an "important factor"

to be considered in determining probable cause.  *United States v. Fama*, 758 F.2d 834, 838 (2d

Cir. 1985).  Thus, even where a warrant application does not provide specific information

regarding drug activity at a suspect's residence, a determination of probable cause will be upheld

where the agent-affiant opines that, based on his training and experience, narcotics traffickers

maintain books and records of their criminal activity at their residence.  *E.g.*, *United States v.*

*Morgan*, 690 F. Supp. 2d 274, 287 (S.D.N.Y. 2010); *United States v. Jackson*, 493 F. Supp. 2d

592, 609-10 (W.D.N.Y. 2006); *United States v. Mullen*, 451 F. Supp. 2d 509, 542-43 (W.D.N.Y.

2006).  Accordingly, I find that Patrone's affidavit established probable cause to believe that

Davidson had been involved over an extended period of time in trafficking and distributing

substantial quantities of cocaine and was thus likely to keep records related to those activities at his home.

Furthermore, Davidson has failed to offer any evidence to suggest that the searching officers did not rely upon the warrant in good faith.  *See United States v. Leon*, 468 U.S. 897 (1984).  No credible evidence exists that the undersigned was knowingly misled or wholly abandoned her judicial role.  *See id.* at 923.  Nor was the warrant so facially deficient or so lacking in probable cause that reliance upon it would have been unreasonable.  *See id.*; *United States v. Cancelmo*, 64 F.3d 804, 807 (2d Cir. 1995) (citations omitted).  Accordingly, it is my recommendation that Davidson's motion to suppress evidence seized from 139 Lyell Avenue and 107 Willowen Drive be denied.

## II.  Motion to Suppress Statements

I turn next to Davidson's motion to suppress statements he made following his arrest.  Statements made during custodial interrogation are generally inadmissible unless a suspect first has been advised of his rights pursuant to *Miranda v. Arizona*, 384 U.S. 436 (1966).  In *Miranda*, the Supreme Court held that the prosecution may not use a defendant's statements that are the product of custodial interrogation unless it demonstrates that the defendant was first warned of his Fifth Amendment privilege against self-incrimination and then voluntarily waived that right.  *Miranda v. Arizona*, 384 U.S. at 444.

> Custodial interrogation exists when a law enforcement official questions an individual and that questioning was (1) conducted in custodial settings that have inherently coercive pressures that tend to undermine the individual's will to resist and to compel him to speak (the in custody requirement) and (2) when the inquiry is

11

> conducted by officers who are aware of the potentially
> incriminating nature of the disclosures sought (the investigative
> intent requirement).

*United States v. Rodriguez*, 356 F.3d 254, 258 (2d Cir. 2004) (citing *United States v. Morales*,

834 F.2d 35, 38 (2d Cir. 1987) (internal citations omitted)).

Here, the government does not contest that Davidson was subject to custodial

interrogation.  Rather, the issue is whether Davidson was advised of his rights and lawfully

waived them before making statements to the interviewing agents.  To establish a valid waiver,

the government must prove by a preponderance of the evidence "(1) that the relinquishment of

the defendant's rights was voluntary, and (2) that the defendant had a full awareness of the right

being waived and of the consequences of waiving that right."  *United States v. Jaswal*, 47 F.3d

539, 542 (2d Cir. 1995) (citing *Moran v. Burbine*, 475 U.S. 412, 421 (1986)).

On the record before me, I find that Davidson was properly advised of his

*Miranda* rights and voluntarily waived them before speaking to Patrone.  Patrone testified that

Hanley read Davidson his *Miranda* rights verbatim from a rights card.  At no time during the

interview did Davidson request an attorney or indicate that he wanted to stop the interview.

Davidson was not threatened, nor were any promises made to him, in order to induce him to

speak.  Moreover, Patrone testified that Davidson did not appear to be influenced by drugs or

alcohol during the interview and answered coherently the questions put to him.

Accordingly, I recommend that the district court deny Davidson's motion to

suppress the oral statements made to Patrone.

## CONCLUSION

For the reasons discussed above, I recommend that the district court deny

Davidson's motions to suppress the evidence seized from 139 Lyell Avenue and 107 Willowen

Drive and the statements he made following his arrest.  (Docket # 32).


                    *s/Marian W. Payson*
                        MARIAN W. PAYSON
                   United States Magistrate Judge

Dated: Rochester, New York
       December   9  , 2011

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

**ORDERED**, that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report and Recommendation in accordance with the above statute and Rule 58.2(a)(3) of the Local Rules of Criminal Procedure for the Western District of New York.[4]

The district court will ordinarily refuse to consider on *de novo* review arguments, case law and/or evidentiary material which could have been, but was not, presented to the magistrate judge in the first instance.  *See, e.g., Paterson-Leitch Co., Inc. v. Massachusetts Mun. Wholesale Elec. Co.*, 840 F.2d 985 (1st Cir. 1988).

**<u>Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.</u>**  *Thomas v. Arn*, 474 U.S. 140 (1985); *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Ltd.,* 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 58.2(a)(3) of the Local Rules of Criminal Procedure for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority."  **<u>Failure to comply with the provisions of Rule 58.2(a)(3) may result in the District Court's refusal to consider the objection.</u>**

Let the Clerk send a copy of this Order and a copy of the Report and Recommendation to the attorneys for the parties.

**IT IS SO ORDERED.**

_s/Marian W. Payson_
MARIAN W. PAYSON
United States Magistrate Judge

Dated: Rochester, New York
December  9 , 2011

---

[4]  Counsel is advised that a new period of excludable time pursuant to 18 U.S.C. § 3161(h)(1)(D) commences with the filing of this Report and Recommendation.  Such period of excludable delay lasts only until objections to this Report and Recommendation are filed or until the fourteen days allowed for filing objections has elapsed.  *United States v. Andress*, 943 F.2d 622 (6th Cir. 1991); *United States v. Long*, 900 F.2d 1270 (8th Cir. 1990).